1

2

3

**UNITED STATES DISTRICT COURT**

4

**NORTHERN DISTRICT OF CALIFORNIA**

5

6    **GLENN GERLACH, III,**                          Case No.  4:21-cv-02768-YGR

7              Plaintiff,                             **ORDER GRANTING MOTION TO COMPEL**
                                                      **ARBITRATION AND STAYING CASE**
8              vs.

9    **TICKMARK INC.,**                               Re: Dkt. No. 12

10             Defendant.

11           Plaintiff Glenn Gerlach, III brings this action against defendant Tickmark, Inc.  (Dkt. No.

12    1-1 at 6-11.)  Plaintiff asserts five causes of action based on defendant's alleged failure to pay

13    plaintiff commission during his employment: (1) breach of contract; (2) violation of California

14    Labor Code Section 200; (3) quantum meruit; (4) unjust enrichment; and (5) wrongful termination

15    in violation of public policy.  ("Complaint" or "Compl.")

16           Now before the Court is defendant's motion to compel arbitration and dismiss or stay the

17    proceedings.  (Dkt. No. 12.)  The matter was fully briefed by the parties.  (*See also* Dkt. Nos. 22

18    and 23.)   The Court determined that this matter was suitable for resolution on the papers and

19    vacated oral argument on the issues.  (Dkt. No. 26.)

20           Having carefully considered the papers submitted and the pleadings in this action, and for

21    the reasons set forth below, the Court **GRANTS** the motion to compel arbitration.  The Court

22    further **ORDERS** that the case shall be **STAYED** pending the completion of arbitration.

23    **I.    BACKGROUND**

24           Defendant is a start-up company that provides an online platform that allows individuals

25    and companies direct access to certified public accountants, tax preparation services, and other tax

26    services.  (Compl. ¶ 7.)  Defendant employed plaintiff to procure revenue from tax service

27    providers who had used defendant's online platform.  (*Id.*)  Plaintiff's employment was subject to

28    an Employment Agreement ("Employment Agreement).  (Declaration of Mario Moya ("Moya

United States District Court
Northern District of California

United States District Court
Northern District of California

Decl."), ¶ 2.)  Under the Employment Agreement, defendant was to pay plaintiff a commission, which was to be based on the contracts and revenue plaintiff had procured.  (Compl. ¶ 7; *see also* Moya Decl.., Ex. 1.)  Plaintiff alleges that defendant failed to pay him the agreed-upon compensation.   (Compl. ¶ 8.)  Thus, this action ensued.

### A.      The Arbitration Agreement

On December 20, 2018, plaintiff executed the Employment Agreement, which contained an arbitration clause.  The Court refers to this portion of the Employment Agreement as the "Arbitration Agreement."  The Arbitration Agreement provides, in part, the following:

**6.9 *Dispute Resolution and Arbitration***. The following procedures shall be used in the resolution of disputes:

**6.9.1 *Dispute*.** In the event of any dispute or disagreement between the parties under this Agreement (excluding an action for injunctive or declaratory relief as provided in Section 5.11), the disputing party shall provide written notice to the other party that such dispute exists. The parties will then make a good faith effort to resolve the dispute or disagreement. If the dispute is not resolved upon the expiration of fifteen (15) days from the date a party receives such notice of dispute, the entire matter shall then be submitted to arbitration as set forth in Section 6.9.2.

**6.9.2 *Binding Individual Arbitration Agreement and Waiver of Jury Trial.***

**The parties hereto knowingly, voluntarily and intentionally waive any right which they may have to a trial by jury in respect to any litigation (including but not limited to any claims, counterclaims, crossclaims and third- party claims) arising out of, relating to, under or in connection with (i) this Agreement, including any matters contemplated by this Agreement; (ii) Resource Consultant's employment or termination thereof; (iii) Resource Consultant's compensation, wages or benefits, any employee plan, and any plan maintained, sponsored or administered by the Company; (iv) any federal, state or other governmental statute, regulation, rule, ordinance or common law; and (v) the parties' performance of their obligations pursuant to this Agreement.**

**Further, if the dispute or disagreement between the parties has not been resolved in accordance with the provisions of Section 6.9.1 above, then any such controversy or claim arising out of, relating to, under or in connection with (i) this Agreement, including any matters contemplated by this Agreement; (ii) Resource Consultant's employment or termination thereof; (iii) Resource Consultant's compensation, wages or benefits, any employee plan, and any plan maintained, sponsored, or administered by the Company; (iv) any federal, state or other governmental statute, regulation, rule, ordinance or common law; and (v) the parties'**

2

United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10

**performance of their obligations pursuant to this Agreement, shall be submitted to binding individual arbitration before a single, neutral arbitrator under the Federal Arbitration Act conducted by the American Arbitration Association under its Employment Arbitration Rules and Mediation Procedures, including the Optional Rules for Emergency Measures of Protection. Any arbitration shall be conducted in Miami, Florida. Resource Consultant agrees not to combine or consolidate any claim(s) with those of other employees, such as in a class or mass action, or to have any claim(s) be arbitrated or litigated jointly or consolidated with any other person's claims. Resource Consultant further agrees that the arbitrator shall have no authority to join or consolidate claims by more than one person. The arbitrator shall be bound to strict interpretation and observation of the terms of this Agreement. The arbitrator shall determine the "prevailing party" for purposes of an attorneys' fee award, and the arbitrator's award may be entered as a judgment in any court of competent jurisdiction. The parties acknowledge and agree that the Federal Arbitration Act (including all its procedural and substantive provisions) and related federal decisional law shall govern this Binding Individual Arbitration Agreement and Waiver of Jury Trial to the fullest extent possible. . . .**

11    Moya Decl., Ex. 1 at 14-15 (underline and bold in original).

12    **II.    LEGAL STANDARD**

13          The Federal Arbitration Act ("FAA") requires a district court to stay judicial proceedings

14    and compel arbitration of claims covered by a written and enforceable arbitration agreement.

15    9 U.S.C. § 3.  The FAA reflects "both a 'liberal federal policy favoring arbitration' and the

16    'fundamental principle that arbitration is a matter of contract.'"  *AT&T Mobility LLC v.*

17    *Concepcion*, 563 U.S. 333, 339 (2011); *Mortensen v. Bresnan Commuc'ns, LLC*, 722 F.3d 1151,

18    1157 (9th Cir. 2013) ("The [FAA] . . . has been interpreted to embody 'a liberal federal policy

19    favoring arbitration.'").  The FAA broadly provides that an arbitration clause in a contract

20    involving commerce "shall be valid, irrevocable, and enforceable."  9 U.S.C. § 2.  Once a court is

21    satisfied that the parties agreed to arbitrate, it must promptly compel arbitration.  9 U.S.C. § 4.

22          When deciding whether a dispute is arbitrable under federal law, a court must answer two

23    questions: (1) whether the parties agreed to arbitrate; and, if so, (2) whether the scope of that

24    agreement to arbitrate encompasses the claims at issue.  *See Brennan v. Opus Bank*, 796 F.3d

25    1125, 1130 (9th Cir. 2015); *see also Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126,

26    1130 (9th Cir. 2000).  In resolving these questions, courts apply "general state-law principles of

27    contract interpretation, while giving due regard to the federal policy in favor of arbitration by

28    resolving ambiguities as to the scope of arbitration in favor of arbitration."  *Mundi v. Union Sec.*

1    *Life Ins. Co.*, 555 F.3d 1042, 1044 (9th Cir. 2009) (quoting *Wagner v. Stratton Oakmont, Inc.*, 83

2    F.3d 1046, 1049 (9th Cir. 1996)).  "[A]s with any other contract, the parties' intentions control,

3    but those intentions are generously construed as to issues of arbitrability."  *Mitsubishi Motors*

4    *Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985).  If the party seeking to compel

5    arbitration establishes both factors, the court must compel arbitration.  *See Chiron Corp.*, 207 F.3d

6    at 1130.  "The standard for demonstrating arbitrability is not a high one; in fact, a district court has

7    little discretion to deny an arbitration motion, since the [FAA] is phrased in mandatory terms."

8    *Republic of Nicar. v. Standard Fruit Co.*, 937 F.2d 469, 475 (9th Cir. 1991).

9    **III.    ANALYSIS**

10            **A.    Introduction of the Arbitration Agreement**

11                    *1.    Authentication*

12           Plaintiff argues that the Court should deny the motion to compel arbitration because

13   defendant did not authenticate the alleged arbitration agreement.  To satisfy the authentication

14   requirement, the proponent must submit evidence "sufficient to support a finding that the item is

15   what the proponent claims it to be."  Fed. R. Evid. 901(a).  The Court may consider testimony that

16   an item is what the proponent claims it to be.  Fed. R. Evid. 901(b)(1).

17           In light of plaintiff's technical objection, defendant has submitted a declaration with its

18   reply brief demonstrating that defendant has a system in place to ensure that an electronic

19   signature was made by the person to whom the signature is attributed.  Specifically, defendant

20   provided a declaration from its co-founder and chief operating officer, Michael Mouriz, which

21   outlines defendant's onboarding process and verification that plaintiff agreed to the Arbitration

22   Agreement as part of his Employment Agreement.  (Declaration of Michael Mouriz, ("Mouriz

23   Decl.")).  Mouriz established that he is familiar with defendant's hiring practices, and that he has

24   personal knowledge and was involved in the hiring of plaintiff.  (Decl. Mouriz, ¶ 3.)  Mouriz

25   further established that he is familiar with defendant's email and instant messaging systems that

26   defendant and its employees use in the ordinary course of the company's business.  (*Id.* at ¶ 4.)

27   Next, he detailed the defendant's use of Docusign to transmit the Employment Agreement to

28   plaintiff.  (*Id.* at ¶ 6-16.)  Mouriz declared that plaintiff executed the Employment Agreement and

United States District Court
Northern District of California

Case 4:21-cv-02768-YGR   Document 29   Filed 07/28/21   Page 5 of 9

1    submitted what he represents to be true and correct copies of evidence that plaintiff signed the

2    Employment Agreement.  (*Id.* at 16.)  He also provided emails of evidence showing when plaintiff

3    reviewed the Employment Agreement and when he signed it.  (*Id.*, Exs. 6, 8, 9, 10.)   The

4    Employment Agreement contains the Arbitration Agreement.  (*Id.*, Ex. 9).  The Court finds that

5    defendant has shown that plaintiff signed the Arbitration Agreement as part of his Employment

6    Agreement.

7                    2.        *Admissibility*

8          Having established that the parties entered into an Arbitration Agreement, the Court next

9    considers whether the Arbitration Agreement is admissible as evidence.  Evidence is inadmissible

10   under the hearsay rule if it is a statement, made outside of court, that is offered to prove the truth

11   of the matter asserted. Fed. R. Evid. 801(c).  The "business record" exception allows hearsay to be

12   admitted as evidence if: (1) it was regular business practice to make that record; (2) it was kept in

13   the regular course of business; (3) it was made by a person with knowledge; and (4) it was made at

14   or near the time the event recorded.  Fed. R. Evid. 803(6); *Clark v. City of Los Angeles*, 650 F.2d

15   1033, 1036–37 (9th Cir. 1981).   Mouriz declared that he has personal knowledge of defendant's

16   onboarding process; specifically, the onboarding of plaintiff because he personally assisted in the

17   process.  (*Id.* at ¶ 5.)   Mouriz also declared that the documents submitted were all made at or near

18   the time the data was transmitted to or from defendant's systems, that it was defendant's regular

19   business practice to make such records, and that the records were kept in the regular course of

20   business.  (*Id.*)  The Court finds documents relating to onboarding documentation and hiring

21   records, namely arbitration agreements, to be the type of records businesses regularly create and

22   maintain in the ordinary course of business.  Further, the Court has no reason to find that Mouriz

23   lacks knowledge of the facts contained within.  Thus, the Arbitration Agreement is admissible

24   under Federal Rule 803(6).[1]

25        ///

26        ///

27

28        [1] The Court notes that its ruling does not address any other issues regarding underlying
     employment agreement, but only on that portion relating to an agreement to arbitrate disputes.

United States District Court
Northern District of California

5

### B.       The Arbitration Agreement's Delegation Clause

As a threshold matter, given the American Arbitration Association's ("AAA") rules, which are incorporated into the parties' arbitration agreement, the Court must determine whether the parties are bound by an arbitration clause that delegates questions of arbitrability to the arbitrator.

Generally, "the [FAA] establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983). Certain issues, however, are presumptively reserved for the court. *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002). These include "gateway" questions of arbitrability, such as "whether the parties have a valid arbitration agreement or are bound by a given arbitration clause, and whether an arbitration clause in a concededly binding contract applies to a given controversy." *Momot v. Mastro*, 652 F.3d 982, 987 (9th Cir. 2011). However, parties may delegate the adjudication of gateway issues to the arbitrator if they "clearly and unmistakably" agree to do so. *Howsam*, 537 U.S. at 83 (citation omitted). "When the parties' contract delegates the arbitrability question to an arbitrator, a court may not override the contract. In those circumstances, a court possesses no power to decide the arbitrability issue." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 529 (2019).

Defendant argues that the incorporation of the AAA rules constitutes "clear and unmistakable" evidence that the parties delegated questions of arbitrability to the arbitrator. The AAA rules provide, in relevant part, that an "arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim." (Moya Decl., Ex. 2, at p. 12.) The Ninth Circuit has held that when the parties have incorporated by reference the AAA rules, which state in relevant part that the "arbitrator shall have the power to rule on his or her own jurisdiction," the parties have "clearly and unmistakably" delegated questions on issues of arbitrability to the arbitrator. *Portland Gen. Elec. Co. v. Liberty Mut. Ins. Co.*, 862 F.3d 981, 985 (9th Cir. 2017) (quoting *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015)).

In response, plaintiff argues that the rule laid out in *Brennan* is limited to situations where both parties are found to be "sophisticated." (Opposition at 7-8.) The Court disagrees. Although

United States District Court
Northern District of California

1    the agreement at issue in *Brennan* was between sophisticated parties, the Ninth Circuit cautioned

2    that its holding did not foreclose the possibility that its reasoning could be extended to

3    unsophisticated parties.  "Our holding today should not be interpreted to require that the

4    contracting parties be sophisticated . . . before a court may conclude that incorporation of the AAA

5    rules constitutes 'clear and unmistakable' evidence of the parties' intent.  Thus, our holding does

6    not foreclose the possibility that this rule could also apply to unsophisticated parties or to

7    consumer contracts." *Brennan*, 796 F.3d at 1130.

8         Since *Brennan*, district courts throughout the Ninth Circuit have been split over whether

9    the incorporation of arbitration rules, such as the AAA rules, constitute "clear and mistakable"

10   evidence that the parties intended for the arbitrator to decide arbitrability issues where one of the

11   parties is "non-sophisticated."  However, "[t]he 'greater weight of authority has concluded that the

12   holding of [*Brennan*] applies similarly to non-sophisticated parties.'"  *McLellan v. Fitbit, Inc.*, No.

13   3:16-CV-00036-JD, 2017 WL 4551484, at *2 (N.D. Cal. Oct. 11, 2017) (collecting cases).  In fact,

14   courts regularly hold that incorporation of the AAA rules is evidence of a "clear and

15   unmistakable" intent to delegate the question of arbitrability to the arbitrator, with no discussion

16   of, or attention to, the parties' level of sophistication.  *See Mohamed v. Uber Technologies, Inc.,*

17   848 F.3d 1201, 1207-09 (9th Cir. 2016); *Naveja v. Primerica, Inc.*, No. 2:20-CV-01298-MCE-

18   KJN, 2021 WL 196176, at *6 (E.D. Cal.  May 17, 2021) (holding incorporation of AAA rules in

19   employment agreement was clear evidence that the plaintiffs delegated arbitrability to the

20   arbitrator with no discussion of employees' sophistication level).

21        The Court also finds plaintiff's authority in support of his interpretation and application of

22   *Brennan* unpersuasive.  Both cases are distinguishable.  *Tompkins v. 23 and Me, Inc.*, No. 5:13-

23   CV-05682-LHK, 2014 WL 2903752 (N.D. Cal. June 25, 2014) was decided before *Brennan* and

24   arose in the context of a consumer agreement involving a click-wrap terms of use agreement.

25   There, the court found that incorporation of the AAA rules was not a "clear and unmistakable"

26   delegation of arbitrability because it was not clear from looking at the delegation language: (1)

27   what specific AAA rules were being incorporated and (2) it was unclear whether other rules would

28   apply.  Unlike *Tompkins,* here, the parties' arbitration agreement expressly states the governing

United States District Court
Northern District of California

1    rules, thus there is no ambiguity.  The Arbitration Agreement states that the arbitration will be

2    "conducted by the American Arbitration Association under its Employment Arbitration Rules and

3    Mediation Procedures, including the Option Rules for Emergency Measures of Protection."

4    (Moya Decl.., Ex. 1, § 6.9.2.)

5          Next, in *Meadows* the court found that the language in a franchise-franchisor agreement

6    was not "clear and unmistakable" evidence that the parties intended to delegate the arbitrability

7    issues to the arbitrator.  *Meadows v. Dickey's Barbecue Restaurants, Inc.*, 144 F. Supp. 3d 1069,

8    1077-79.   There, the court explained that the plaintiffs were "far less sophisticated" than the

9    defendant, a well-established franchisor corporation, and noted that "courts frequently treat

10   franchise agreements more like consumer contracts than like commercial ones, owning the lower

11   sophistication and inferior bargaining position to the franchisees." *Id.* at 1079.   Here, plaintiff's

12   agreement is not of a franchisee-franchisor, and, in any event, the Court does not find plaintiff to

13   be a non-sophisticated party.  The fact that plaintiff knew to ask questions about his stock options,

14   contingences, and what would happen to his investments should the company be sold leads the

15   Court to find that plaintiff is sophisciated enough to understand the consequences here.  (*See*

16   Mouriz Decl., ¶ 11.)

17         Thus, the Court concludes that the parties "clearly and unmistakably" intended to delegate

18   questions of arbitrability to the arbitrator.  Accordingly, the Court finds that whether the

19   arbitration agreement is valid and whether this dispute falls within its scope are questions for the

20   arbitrator, not this Court, to decide.[2]

21

22

_____

23         [2] Plaintiff's remaining argument on unconscionability will be decided by the arbitrator in
     the course of determining the arbitrability of the dispute.  Furthermore, the Court finds that
24   plaintiff's claim under section 229 of the California Labor Code is also subject to the arbitration
     agreement.  *See Perry v. Thomas*, 482 U.S. 483, 491 (1987) ("This clear federal policy places § 2
25   of the Act in unmistakable conflict with California's § 229 requirement that litigants be provided a
     judicial forum for resolving wage disputes. Therefore, under the Supremacy Clause, the state
26   statute must give way.").

27

28

**C.      Defendant's Request to Dismiss or Stay the Action**

Next, the Court addresses defendant's contention that because plaintiff's claims are subject to arbitration, dismissal is proper.  (Motion at 7-8.)  Having not reached the gateway questions of arbitrability, and instead finding that such questions are delegated to the arbitrator, the Court finds that dismissal of plaintiff's claims at this juncture would be inappropriate.

In the alternative, defendant requests that the Court stay the action pending resolution of the arbitration.  (*Id.*)  With respect to a stay of proceedings, the FAA provides:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, ***upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration*** under such an agreement, ***shall on application of one of the parties stay the trial of the action*** until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3 (emphasis supplied); *see also BrowserCam, Inc. v. Gomez, Inc.*, No. 08-CV-02959-WHA, 2009 WL 210513, at *3 (N.D. Cal. Jan. 27, 2009) (it is "within a district court's discretion whether to stay, 'for [c]onsiderations of economy and efficiency,' an entire action, including issues not arbitrable, pending arbitration") (quoting *United States ex rel. Newton v. Neumann Caribbean Int'l., Ltd.*, 750 F.2d 1422, 1427 (9th Cir. 1985)).  Accordingly, the Court **STAYS** this action pending arbitration.

**IV.      CONCLUSION**

For the foregoing reasons, the Court **GRANTS** the motion to compel arbitration.  The Court furthers **STAYS** the case pending the outcome of arbitration. However, for statistical purposes only, the case shall be administratively closed.  The parties shall file a joint status report within fourteen (14) from the date of the arbitrator's order, and if necessary and appropriate, bring an administrative motion to reopen the case.

This Order terminates Docket Number 12.

**IT IS SO ORDERED.**

Dated:  July 28, 2021

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT JUDGE**